IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

ZULFIQAR KHAN,                          )
                                        )
     Plaintiff,                        )
                                        )
     v.                                )        Case No. 1:14-cv-00561-GBL-IDD
                                        )
FEDEX COPORATION, et al.,               )
                                        )
     Defendants.                       )

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendant FedEx Office and Print Services, Inc. ("FedEx Office")'s Motion for Summary (Doc. 46). This is an employment discrimination case where Plaintiff Zulfiqar Khan, proceeding *pro se*, has asserted claims against his former employer, FedEx Office, for discrimination on the basis of his national origin and religion, and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. 42 U.S.C. § 2000e *et. seq.* ("Title VII").

There are two issues before the Court. The first issue is whether a genuine issue of material fact exists as to Plaintiff's claim for retaliation where Plaintiff (1) identified a claim for retaliation on a previously filed Equal Employment Opportunity Commission ("EEOC") Intake form, but failed to check the box for retaliation on his EEOC Charge, and (2) sought to include a claim for retaliation by writing a letter to the EEOC after its investigation commenced.

The second issue is whether a genuine issue of material fact exists as to Plaintiff's claim for discrimination where Plaintiff alleges that he was the victim of intentional discrimination on the basis of his religion and national origin and the performance issues that led to his termination were manufactured.

The Court finds that FedEx Office is entitled to summary judgment for two reasons. First, the Court holds that Plaintiff failed to exhaust his administrative remedies on his claim for retaliation because: (1) Plaintiff did not check the box for retaliation on his EEOC Charge; (2) Plaintiff's claim for retaliation is not reasonably related to his claims for discrimination on the basis of religion and national origin; and (3) a reasonable investigation would not focus on retaliation merely because Plaintiff identified claims for discrimination based on his religion and national origin on his EEOC Charge.

Second, the Court holds that Plaintiff has not has presented evidence to raise a genuine issue of material fact that he was the victim of intentional discrimination on the basis of his religion and national origin. Plaintiff cannot demonstrate that he (1) was performing his job duties at a level that met his employer's expectations at the time he was terminated, and (2) was replaced by someone of comparative qualifications outside of his protected class. Furthermore, Plaintiff has not established that Defendant's proffered reason for terminating Plaintiff's employment—poor work performance—was not its true reason, but rather a pretext for religion and national origin discrimination under Title VII.

## I. BACKGROUND

Plaintiff Zulfiquar Khan, a Muslim man from Pakistan, worked for FedEx Office from April 2003 to March 2011 (Doc. 1-10). He was employed as a Production Operator at a retail center from March 2003 to January 2006 (Doc. 47). In July 2006, Plaintiff was rehired[1] as an Assistant Manager at Centralized Production Center #111 in Fairfax, Virginia (Doc. 1-9). Due to the limited technology capabilities of many of FedEx Office's retail centers, the retail centers

---

[1] Prior to being rehired by FedEx Office, Plaintiff was worked as a Production Operator at a FedEx Office retail center from March 2003 to January 2006 (Docs. 47; 47-1).

2

refer large copy projects to centralized production centers ("CPCs") whose sole focus is to handle large print and copy projects (Docs. 47; 47-1).

In his role as an Assistant Manager at a CPC, Plaintiff was responsible for overseeing print jobs sent in from retail centers, supervising approximately ten team members, and ensuring CPC production employees met FedEx Office's quality and customer service standards. *Id.* Plaintiff reported to a CPC Manager, who was responsible for overseeing the entire facility and all of its employees (Docs. 47; 47-2). Plaintiff was in charge of the second shift of the day, which encompassed the close of the business work day (Docs. 47; 47-1).

## A.   Plaintiff's Salary History as Assistant Manager

When Plaintiff was rehired by FedEx Office in July 2006 he was earning $14 per hour (Docs. 47; 47-1). Plaintiff was initially offered $13 per hour but he negotiated for his salary to be $14 per hour. *Id.* According to FedEx Office, salary decisions are discretionary and made based on the job applicant's experience, geography, the needs of the market in which he was going to work, and other factors (Docs. 47; 47-2). Plaintiff's salary was just above the midpoint on the permissible scale for his starting salary. *Id.*

FedEx Office performs annual performance reviews of all employees, and an employee's pay increase depends on his performance appraisal score (Docs. 47; 47-2). Based on Plaintiff's performance appraisal score in September 2007, Plaintiff's hourly rate was increased to $14.74. *Id.* One year later, Plaintiff's hourly rate was increased to $15.34, and in September 2010, Plaintiff's hourly rate was once again increased to $15.49 based on his annual performance appraisal. *Id.*

3

**B.     Plaintiff's Performance Evaluations**

FedEx Office has a policy of progressive discipline, and Plaintiff received discipline in accordance with this policy (Docs. 47; 47-2).  On July 9, 2010, CPC Manager Max Wolfman issued Plaintiff a verbal warning for his failure to notify management in advance when he worked overtime, as all assistant managers were required to request approval before working overtime (Docs. 47; 47-2; 47-5).  In the verbal warning, Mr. Wolfman coached Plaintiff on ways to eliminate unnecessary overtime, and Mr. Wolfman stated that, in the event Plaintiff failed to follow FedEx Office's policies and practices, he would issue a written warning to Plaintiff. *Id.*

On September 28, 2010, Mr. Wolfman verbally counseled Plaintiff about the need for Plaintiff to improve his oversight of product quality and ability to manage team members and properly staff the CPC (Docs. 47; 47-2; 47-5).  Mr. Wolfman explained to Plaintiff that other assistant managers reported that Plaintiff regularly failed to comply with FedEx Office's "one piece workflow" model whereby the CPC requires managers to print an initial proof of a copy or print project and obtain customer approval prior to printing the remainder of the project. *Id.* Mr. Wolfman understood from other CPC assistant managers that Plaintiff's failure to implement this model caused them to be significantly behind when they started their shift because he consistently left several stacks of unbound printed materials sitting out (Docs. 47; 47-5).  Mr. Wolfman also told Plaintiff that FedEx Office received complaints from Senior Center Managers that Plaintiff was turning down their projects instead of managing the CPC's workflow more efficiently. *Id.*

Several weeks later, Mr. Wolfman observed Plaintiff continuing to ignore FedEx Office's one piece workflow process, failing to perform at least two quality audits, exhibiting a lack of attention to detail, and approving a project that was completed incorrectly (Docs. 47; 47-2; 47-5).

As a result, Mr. Wolfman issued Plaintiff a written warning on October 18, 2010 addressing these issues. *Id.* In addition, Plaintiff was counseled about his ongoing performance issues on December 2, 2010. *Id.*

Despite these warnings, Plaintiff's performance issues persisted (Docs. 47; 47-5). As a result, Mr. Wolfman issued Plaintiff a Level II warning on January 10, 2011 because Plaintiff continued to exhibit poor communication, time management and a lack of attention to detail (Doc. 47-5). During the discussion regarding this Level II written warning, Mr. Wolfman counseled Plaintiff on repeated performance issues, including approving an order that called for 300 copies and instead printing and sending 3,000 copies, and failing to meet deadlines, which resulted in complaints from Center Managers. *Id.*

Despite the repeated verbal and written warnings, Plaintiff continued to exhibit poor communication, time management, and lack of attention to detail (Docs. 47; 47-2; 47-5). Specifically,

(1)  On January 10, 2011, Mr. Wolfman emailed Plaintiff and asked him to respond immediately regarding a matter at the CPC. Plaintiff did not respond to Mr. Wolfman until five days later (Docs. 47; 47-5).

(2)  In mid-January 2011, Plaintiff approved time off for three Team Members and did not schedule other Team Members accordingly, resulting in gaps in coverage at the CPC. *Id.*

(3)  Around this same time, Plaintiff again failed to request approval from Defendant before working excessive overtime hours. *Id.*

(4)  Additionally, although Defendant had repeatedly emphasized to Plaintiff the importance of following a one piece workflow model, on February 12, 2011, Plaintiff left stacks of printed jobs on the table for the next manager to finish. *Id.*

(5) In addition to these performance issues, other retail Center Managers and customers complained that Plaintiff mishandled or inappropriately approved at least three print jobs. *Id.*

As a result, Plaintiff received a final written warning on February 18, 2011, advising Plaintiff that his failure to improve his performance would result in his termination (Docs. 47; 47-2).

### C. Plaintiff's Termination

Following the February 2011 final written warning, FedEx Office asserts that Plaintiff continued to: (1) understaff the CPC; (2) not obtain requisite approval for excessive overtime hours worked during the week of February 28, 2011; and (3) not implement the one piece workflow model (Docs 47; 47-5). Accordingly, on March 11, 2011, FedEx Office terminated Plaintiff's employment (Docs. 47; 47-2). Attached to Plaintiff's termination form is supportive documentation, including Plaintiff's overtime hours reports, a Team Member's vacation request approved by Plaintiff, and photographs displaying print orders stacked on a table and not organized in accordance with FedEx Office's one piece workflow model. *Id.*

### D. Plaintiff's Appeal

On March 17, 2011, Plaintiff appealed his termination to FedEx Office's Human Resources Department (Docs. 47; 47-1; 47-2). In accordance with its appeal process, FedEx Office referred the matter to a Human Resources Representative who had no history of working with Plaintiff and could serve as an objective party. *Id.* After reviewing Plaintiff's employment history and speaking with Plaintiff, FedEx Office affirmed Plaintiff's termination based on his continued performance issues. *Id.*

Plaintiff did not complain to FedEx Office's Human Resources Department that his termination was based on his national origin or religion, at the time, nor did he contact FedEx

Office's anonymous Alert Line to report any concerns about discrimination or retaliation during his tenure (Docs. 47; 47-1).

FedEx Office ultimately replaced Plaintiff's position two months later with an employee who self-identifies as Asian, which is the same demographic category Plaintiff identified himself with while he was employed by FedEx Office (Docs. 47; 47-2).

### E.      Plaintiff's EEOC Charge

Plaintiff filled out an EEOC Intake Questionnaire on April 13, 2011 indicating he faced discrimination on the basis of his national origin and religion, and retaliation while employed by FedEx Office (Doc. 1-10 at 3-6).

On April 28, 2011, Plaintiff filed a Charge of Discrimination with the Fairfax County Human Rights Commission alleging discrimination based on religion and national origin from the time period of May 1, 2010 to March 11, 2010 (Doc. 1-10 at 2). On August 21, 2012, the EEOC investigated Plaintiff's claims of discrimination based on national origin and religion, determined that Plaintiff's claims were unfounded, and dismissed the Charge (Doc. 1-10 at 7-8). Plaintiff requested reconsideration of the dismissal on August 28, 2012 (Doc. 1-10 at 9-13). The EEOC granted Plaintiff's request for reconsideration and reopened the investigation on September 11, 2012 (Doc. 1-10 at 14). On November 6, 2012, Plaintiff wrote a letter to the EEOC, advising that he believed that he included a claim for retaliation on the Charge, but noticed that the box was not checked when he received a mailed copy of the Charge two weeks later (Doc. 1-10 at 15-16). On November 18, 2013, the EEOC released its findings on Plaintiff's claims for discrimination on the basis of national origin and religion (Doc. 1-10 at 4). Based on its investigation, the EEOC determined that the evidence did not support Plaintiff's contention that Defendant violated any law. *Id.* The EEOC advised Plaintiff that he had until December 2,

2013 to submit further documentation to rebut the EEOC's determination. *Id.* Plaintiff submitted no further documentation to support his decision, and the EEOC dismissed the Charge and issued a Notice of Right to Sue. *Id.* Because the EEOC mailed its determination and Notice of Right to Sue to an incorrect address, Plaintiff did not receive the documents until February 21, 2014 (Doc. 1-12 at 6). Plaintiff subsequently requested reconsideration of the EEOC's determination on February 23, 2014 (Doc. 1-12 at 2-4). The EEOC denied Plaintiff's request for reconsideration on March 18, 2014 (Doc. 1-12 at 6-7).

### F.  Plaintiff's Complaint

Plaintiff purportedly asserts claims for national origin and religion discrimination based on his issue with a company-wide decision implemented by FedEx Office in 2009 where FedEx Office made the decision that employees would not unilaterally be eligible for annual raises due to the economic climate at that time (Docs. 47; 47-1). Plaintiff believes that this decision was "arbitrary and discriminatory in nature" (Doc. 1).

Plaintiff maintains that he should have maintained a higher hourly rate on his discretionary pay (Doc. 1). After Plaintiff complained to CPC Manager about the "discrimination in payroll," Max Wolfman, Plaintiff contends that "Mr. Wolfman's attitude and treatment towards Plaintiff was totally different and he started quarreling, threatening Plaintiff on petty matters." *Id.*

Plaintiff denies that there is any proper basis for the detailed discipline he received. Plaintiff states that FedEx Office wrote him up "for manufactured reasons" and believes that he "was terminated without any reason" (Docs. 1; 47-1). Plaintiff alleged that the legitimate, nondiscriminatory issues FedEx Office gave as the rationale for his termination was "a hundred percent wrongly attributed to, me, a hundred percent." *Id.*

FedEx Office argues that there is no evidence to suggest that it acted in a discriminatory manner with respect to any aspect of Plaintiff's employment (Doc. 47).  FedEx Office asserts that when Plaintiff was rehired in 2006, he was offered a managerial position at a discretionary salary that was at the midpoint of the corporate-approved range for his job description (Docs. 1-9; 47).  During his tenure, FedEx Office contends that Plaintiff received merit-based annual raises that corresponded to the annual evaluations he received from his supervisors (Docs. 47; 47-1; 47-2).  FedEx Office asserts that in 2010, Plaintiff continually failed to meet FedEx Office's legitimate, nondiscriminatory and objective standards and was progressively disciplined accordingly (Docs. 47; 47-2; 47-5).  The culmination of this discipline, coupled with Plaintiff's failure to improve his performance deficiencies, resulted in FedEx Office terminating Plaintiff's employment in March of 2011. *Id.*

FedEx Office maintains that Plaintiff has no direct evidence of discrimination or retaliation, but instead rests on his self-serving and baseless assertions that the progressive discipline was without merit, his performance was exemplary, and his pay rate should have been higher (Doc. 47).  FedEx Office argues that Plaintiff's meritless, generalized and conclusory allegations cannot support his causes of action.  As such, FedEx Office contends, Plaintiff's Complaint should be dismissed with prejudice. *Id.*

## II. STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56, the Court must grant summary judgment if the moving party demonstrates that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

In reviewing a motion for summary judgment, the Court views the facts in the light most favorable to the nonmoving party. *Boitnott v. Corning, Inc.*, 669 F.3d 172, 175 (4th Cir. 2012)

(citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). Once a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine dispute exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986); *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (citations omitted). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Emmett v. Johnson*, 532 F.3d 291, 297 (4th Cir. 2008) (quoting *Anderson*, 477 U.S. at 247–48).

A "material fact" is a fact that might affect the outcome of a party's case. *Anderson*, 477 U.S. at 248; *JKC Holding Co. v. Wash. Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001). The materiality of a fact is determined by the substantive law, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248; *Hooven-Lewis v. Caldera*, 249 F.3d 259, 265 (4th Cir. 2001).

A "genuine" issue concerning a "material" fact arises when the evidence is sufficient to allow a reasonable jury to return a verdict in the nonmoving party's favor. *Resource Bankshares Corp. v. St. Paul Mercury Ins. Co.*, 407 F.3d 631, 635 (4th Cir. 2005) (quoting *Anderson*, 477 U.S. at 248). Rule 56(e) requires the nonmoving party to go beyond the pleadings and by its own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

## III. ANALYSIS

A.    **Plaintiff's Failure to Comply with Local Rule 56(b)**

As a preliminary matter, the Court takes up the issue of whether Plaintiff has failed to comply with Local Rule 56(B) in his Opposition to FedEx Office's Motion for Summary Judgment (Doc. 50). A party's failure to comply with the Eastern District of Virginia's Local Rule could complicate the district court's factual determination. *Rogers v. Stem*, No. 13-1923, 2014 WL 5753656, at *4 (4th Cir. Nov. 6, 2014). Specifically, Plaintiff's Statement of Disputed Facts does not list all material facts to which Plaintiff asserts there is a genuine issue to be litigated. Instead, Plaintiff uses this section as a means of asserting additional arguments, legal conclusions, "and unfounded characterizations of purported facts" (Doc. 52).

The Court refuses to consider Plaintiff's self-serving statements as evidence to create a dispute of material fact because "allegations contained in a complaint are not evidence, and cannot defeat a motion for summary judgment." *See Cambridge Capital Group v. Pill*, 20 Fed. App'x 121, 124-25 (4th Cir. 2001) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) ("Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves . . . ."). Where a plaintiff has not properly supported his factual allegations, the court must proceed by considering the defendant's facts as undisputed for purposes of the motion and assessed whether the defendant was entitled to summary judgment based on those undisputed facts. *See Anglinmatumona v. Micron Corp.*, No. 1:11-cv-572, 2012 WL 1999489, at * 4 (E.D. Va. June 4, 2012) (citing Fed. R. Civ. P. 56(e)(2)-(3); Local Civil Rule 56(B)). Although Plaintiff's allegations are generalized, conclusory and uncorroborated in violation of Local Rule 56(b), the Court will nevertheless proceed to assess the merits of Plaintiff's claims.

**B.     Plaintiff Failed to Exhaust his Administrative Remedies on his Claim for Retaliation**

Before filing suit under Title VII, a plaintiff must file an administrative charge with the EEOC. *See* 42 U.S.C. §§ 2000e–5(e)(1), 2000e–5(f)(1). This "exhaustion requirement ensures that the employer is put on notice of the alleged violations so that the matter can be resolved out of court if possible." *Miles v. Dell, Inc.*, 429 F.3d 480, 491 (4th Cir. 2005).  The exhaustion requirement is not "simply a formality to be rushed through so that an individual can quickly file his subsequent lawsuit." *Chacko v. Patuxent Institution*, 429 F.3d 505, 510 (4th Cir. 2005). Rather, together with the agency investigation and settlement process it initiates, the requirement "'reflects a congressional intent to use administrative conciliation as the primary means of handling claims, thereby encouraging quicker, less formal, and less expensive resolution of disputes.'" *Balas v. Huntington Ingalls Indus., Inc.*, 711 F.3d 401, 407 (4th Cir. 2013) (quoting *Chris v. Tenet*, 221 F.3d 648, 653 (4th Cir. 2000)).  As a consequence, any claims brought in a subsequent lawsuit must be stated in the EEOC Charge, reasonably related to the claims raised in the EEOC Charge, or "developed by reasonable investigation of the original complaint." *Chacko*, 429 F.3d at 506.  In determining what claims have been properly brought, the Court is confined only to the Charge filed with the EEOC. *Balas*, 711 F.3d at 408.

Plaintiff's failure to allege in his Charge that he was retaliated against precludes him from making this claim in this action.  Plaintiff did not check the box for retaliation in his EEOC Charge, nor did he claim retaliation or allege any facts in his narrative relating to his belief that he was retaliated against because he complained he was not being adequately compensated (Doc. 1-10, p. 2).  Instead, he asserted only claims for, and alleged facts relating to discrimination on the basis of his national origin and religion, noting that he (1) was paid less than other assistant managers at FedEx Office despite having more experience, (2) "discharged for lack of

12

performance," and (3) believes "all of the allegations in [his] termination letter are false." *Id.*
Thus, a reasonable investigation would not focus on retaliation merely because Plaintiff
identified discrimination based on his religion and national origin.

For example, in *Miles v. Dell*, the Fourth Circuit held that a retaliation claim was not
reasonably related to an EEOC Charge where, "[a]lthough [plaintiff's] narrative states that she
complained to [the firing employee's supervisor], it does not state that she complained to him
about discrimination." 429 F.3d at 493. Any claim for retaliation is therefore not reasonably
related to the Charge's allegations.

Plaintiff may argue that he properly raised a claim for retaliation by writing a letter to the
EEOC on November 6, 2012, in which he informed the agency that he intended on checking the
box for retaliation on his EEOC charge (Doc. 1-10 at 15-16). Although a charge may be
amended to cure any omissions, see 29 C.F.R. § 1601.12(b) (2015), a plaintiff does not properly
amend a charge by mailing a letter to the EEOC, even if the plaintiff subjectively believes that he
is amending the charge. *Sloop v. Mem'l Mission Hosp.*, 198 F.3d 147, 149 (4th Cir.1999)
(finding that a retaliation claim was not exhausted when it was referenced only in a letter, not the
EEOC charge document); *Balas*, 711 F.3d at 408 (holding that claims asserted only in letters and
intake questionnaire responses are not part of the EEOC charge and have not been exhausted).
Simply mailing a letter to the EEOC does not "put the charged party on notice of the claims
raised against it." *Sloop*, 198 F.3d at 149. Because Plaintiff did not include the retaliation claim
in the EEOC Charge, and Defendant was therefore not given proper notice of that claim, Plaintiff
is confined to the national origin and religion claims that he raised in the Charge. *See id.*; *Balas*,
711 F.3d at 408.

### C. Plaintiff's Religion and National Origin Claims Fail

Under Title VII, it is an "unlawful employment practice for an employer ... to discriminate against any individual ... because of ... religion ... or national origin." 42 U.S.C. § 2000e–2(a)(1).   To establish a discrimination claim, a plaintiff may rely on direct evidence, indirect evidence, or a combination of both direct and indirect evidence. See, e.g., Desert Palace, Inc. v. Costa, 539 U.S. 90, 99–10184 (2003).  Regardless of the type of evidence offered, "[t]he ultimate question in every employment discrimination case involving a claim of disparate treatment is whether the plaintiff was the victim of intentional discrimination." Hill v. Lockheed Martin Logistics Mgmt., Inc., 354 F.3d 277, 286 (4th Cir. 2004).

In this case, Plaintiff relies on the judicially created scheme of proof originally established for use in Title VII cases in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). That scheme requires that Plaintiff prove, by a preponderance of the evidence, a prima facie case of discrimination. Hill, 354 F.3d at 285. To demonstrate a prima facie case of discrimination under Title VII, a plaintiff must show that (1) he is a member of a protected class, (2) an adverse employment action, (3) he was performing his job duties at a level that met his employer's legitimate expectations at the time of the adverse employment action, and (4) the job remained open or was filled by a similarly qualified applicant outside of Plaintiff's class. See McDonnell Douglas Corp., 411 U.S. at 802. Once Plaintiff has established his prima facie case, Defendant must respond with evidence that it acted with a legitimate, nondiscriminatory purpose. Id. If Defendant meets this burden of production, the presumption of discrimination created by the prima facie case vanishes, requiring Plaintiff to prove that Defendant's proffered reason is a pretext for discrimination in order to recover. Id. at 804.

The Court finds that Plaintiff has failed to establish a prima facie case for discrimination based on national origin or religion. It is undisputed that Plaintiff meets the first two requirements, he is a Muslim from Pakistan, and his termination constitutes an adverse employment action[2]. Plaintiff, however, cannot establish a claim for discrimination or discriminatory discharge because Plaintiff cannot show that he was performing his duties at a level that met FedEx Office's legitimate expectations or that his position was filled by a similarly qualified applicant outside of the protected class.

First, Plaintiff has not demonstrated that he suffered an adverse employment action because of his national origin or religion.  The evidence clearly demonstrates that Plaintiff repeatedly failed to adhere to FedEx Office's policies and standards, and did not improve his performance despite multiple instances of instructive counseling over a months-long period.  As noted above:

On July 9, 2010, CPC Manager Max Wolfman issued Plaintiff a verbal warning for his failure to notify management in advance when he worked overtime, as all assistant managers were required to request approval before working overtime (Docs. 47; 47-2; 47-5).  In the verbal warning, Mr. Wolfman coached Plaintiff on way to eliminate unnecessary overtime, and Mr. Wolfman stated that, in the event Plaintiff failed to follow FedEx Office's policies and practices, he would issue a written warning to Plaintiff. *Id.*

---

[2] The verbal and written warnings Plaintiff received do not rise to the level of an adverse employment action as Plaintiff did not suffer any loss of pay, benefits, or other tangible detriment. *See Thompson v. Potomac Elec. Power Co.*, 312 F.3d 645, 651 (4th Cir. 2002) (holding that disciplinary discussions that did not result in lost pay or position failed to state a prima facie claim of discrimination, even if different than other employees); *Smith v. Sec'y of Army*, No. 1:11cv724, 2012 WL 3866487, *2 (E.D. Va. Sep. 5, 2012) (alleged disrespectful conduct not an adverse employment action); *Dawson v. Rumsfeld*, No. 1:05cv1270, 2006 WL 325867, *6 (E.D. Va. Feb. 8, 2006) ("Increased scrutiny of an employee under the general policies and disciplinary procedures governing her employment is therefore not an adverse employment action.").

On September 28, 2010, Mr. Wolfman verbally counseled Plaintiff about the need for Plaintiff to improve his oversight of product quality and ability to manage team members and properly staff the CPC (Docs. 47; 47-2; 47-5). Mr. Wolfman explained to Plaintiff that other assistant managers reported that Plaintiff regularly failed to comply with FedEx Office's "one piece workflow" model whereby the CPC requires managers to print an initial proof of a copy or print project and obtain customer approval prior to printing the remainder of the project. *Id.* Mr. Wolfman understood from other CPC assistant managers that Plaintiff's failure to implement this model caused them to be significantly behind when they started their shift because he consistently left several stacks of unbound printed materials sitting out (Docs. 47; 47-5). Mr. Wolfman also told Plaintiff that FedEx Office received complaints from Senior Center Managers that Plaintiff was turning down their projects instead of managing the CPC's workflow more efficiently. *Id.*

Several weeks later, Mr. Wolfman observed Plaintiff continuing to ignore FedEx Office's one piece workflow process, failing to perform at least two quality audits, exhibiting a lack of attention to detail, and approving a project that was completed incorrectly (Docs. 47; 47-2; 47-5). As a result, Mr. Wolfman issued Plaintiff a written warning on October 18, 2010 addressing these issues. *Id.* In addition, Plaintiff was counseled about his ongoing performance issues on December 2, 2010. *Id.*

Despite these warnings, Plaintiff's performance issues persisted (Docs. 47; 47-5). As a result, Mr. Wolfman issued Plaintiff a Level II warning on January 10, 2011 because Plaintiff continued to exhibit poor communication, time management and a lack of attention to detail (Doc. 47-5). During the discussion regarding this Level II written warning, Mr. Wolfman counseled Plaintiff on repeated performance issues, including approving an order that called for

300 copies and instead printing and sending 3,000 copies, and failing to meet deadlines, which resulted in complaints from Center Managers. *Id.*

Despite the repeated verbal and written warnings, Plaintiff continued to exhibit poor communication, time management, and lack of attention to detail (Docs. 47; 47-2; 47-5). Specifically: (1) on January 10, 2011, Mr. Wolfman emailed Plaintiff and asked him to respond immediately regarding a matter at the CPC. Plaintiff did not respond to Mr. Wolfman until five days later; (2) in mid-January 2011, Plaintiff approved time off for three Team Members and did not schedule other Team Members accordingly, resulting in gaps in coverage at the CPC; (3) around this same time, Plaintiff again failed to request approval from Defendant before working excessive overtime hours; and (4) although FedEx Office had repeatedly emphasized to Plaintiff the importance of following a one piece workflow model, on February 12, 2011, Plaintiff left stacks of printed jobs on the table for the next manager to finish (Docs. 47; 47-5).

This evidence undermines Plaintiff's assertion that his "work history is spotless, satisfactory, hardworking, and full of sacrifices" (Doc. 50). Plaintiff's self-serving evaluation of his performance "cannot create a genuine issue of material fact." *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985). It is FedEx Office's perception of Plaintiff's performance that matters, not Plaintiff's. *See Warch v. Ohio Cas. Ins. Co.*, 435 F.3d 510, 518 (4th Cir. 2006) (collecting authority for the proposition that a plaintiff's own assessment as it his performance is irrelevant and that it is the decision-maker's perception that matters); *Kings v. Rumsfeld*, 328 F.3d 145, 149 (4th Cir. 2003) (holding that the plaintiff's self-assessment is irrelevant); *DeJarnette v. Corning, Inc.*, 133 F.3d 293, 200 (4th Cir. 1998) (plaintiff's self-assessment and the opinions of plaintiff's coworkers are not relevant); *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 959, 960

(4th Cir. 1996) (plaintiff's own "conclusory statements about her qualifications" are insufficient to establish a prima facie case of discrimination").

Other than his own opinions, the only evidence that Plaintiff has produced to rebut the his disciplinary record is two declarations from former co-workers whose statements fail to meet Rule 56(c)(4)'s mandate that a declaration "must be made on personal knowledge," and "set out facts that would be admissible in evidence." Fed. R. Civ. P. 56(c)(4).

The declaration of Oscar Maranon is nothing more than a brief, speculative, generalized statement and contains no facts that indicate that Mr. Khan was discriminated against based on his national origin or religion (Doc. 50-1 at 9). Mr. Maranon was a co-worker of Mr. Khan who does not have knowledge of the reasons why Plaintiff was subject to progressive discipline up to and including termination by his supervisors, and Mr. Maranon's opinion of Plaintiff's performance is not decisive. *See, e.g., McKnight v. Ridgecrest Health Group, LLC*, No. 2:11cv00032, 2013 WL 173005, at *5 (W.D. Va. Jan. 16, 2013) (stating that "[n]either [Plaintiff's] own assessment of her performance nor the assessment of her coworker are particularly relevant. The key inquiry is whether, in the eyes of the decision-makers who terminated her, [Plaintiff] was performing in line with [the employer's] reasonable expectations").

The declaration of Liaquat Ali Chauduri, another co-worker of Plaintiff, details his own brief work experience with CPC Manager, Max Wolfman (Doc. 50-1 at 5-7). Mr. Chaudhari subjectively asserts that he was "target[ed] . . . for no reason" because Mr. Wolfman allegedly did not cater to Mr. Chaudhari's preferences by: (1) speaking in a loud voice on two alleged occasions; (2) not hiring certain job candidates Mr. Chaudhari preferred; (3) not changing Mr. Chaudhari's work schedule; and (4) issuing Mr. Chaudhari a single piece of discipline in the

form of a verbal warning. *Id.* This declaration is a combination of impermissible "me too" evidence and inadmissible speculation. *Id.*; *See, e.g., Abramson v. American Univ.*, No. 86-1413, 1988 WL 152020, at *2 (D.C.C. Jun. 13, 1998) (refusing to expand the plaintiff's disparate treatment claim into a "general examination of every act allegedly taken against every dissatisfied minority member."); *Schrand v. Fed. Pacific Elec. Co.*, 851 F.2d 152, 156 (6th Cir. 1988) (noting that trial courts regularly prohibit "me too" evidence from or about other employees who claim discriminatory treatment because it is highly prejudicial and only slightly relevant).

Second, Plaintiff has not shown that after his termination he was replaced by someone of comparable qualifications outside the protected class. The undisputed record demonstrates that nearly two months after Plaintiff's termination, he was replaced by an Asian employee, which demographically is the same category into which Plaintiff fell (Doc. 47-2). *See Asuncion v. Southland Corp.*, No. 96-2702, 1998 U.S. App. LEXIS 2840, at *3 (4th Cir. Feb. 23, 1998) (holding that the plaintiff could not make his required showing of race and national origin discrimination because he was replaced by someone within the same protected category).

Even if Plaintiff could establish a prima facie case for discrimination based on national origin or religion, FedEx Office has articulated a legitimate, nondiscriminatory reason for termination of Plaintiff's employment (i.e., Plaintiff continually failed FedEx Office's legitimate, objective standards and was disciplined accordingly. The culmination of this discipline, coupled with Plaintiff's failure to improve his performance deficiencies resulted in Plaintiff's termination), and Plaintiff has not presented material evidence which would raise a triable issue as to pretext. Aside from his own speculation, Plaintiff has presented no evidence that would "cast down upon the veracity" of FedEx Office's proffered explanation for his termination.

*Rowe v. The Marley Company*, 233 F.3d 825, 830–31 (4th Cir. 2000).   The wisdom of Defendant's termination decision is not the proper test.   The Court "does not sit as a kind of super-personnel department weighing the prudence of employment decisions made by firms charged with employment discrimination" so that "when an employer articulates a reason for [its treatment of the plaintiff] not forbidden by law, it is not [the court's] province to decide whether the decision was wise, fair, or even correct, ultimately, so long as it truly was the reason for the [employment decision]."   *DeJarnette*, 133 F.3d at 298-99 (internal quotations and citations omitted).   Consequently, Plaintiff has failed to raise a genuine issue of material fact that he was the victim of intentional discrimination on the basis of his religion and national origin.

## IV. CONCLUSION

For the foregoing reasons, the Court grants FedEx Office's Motion for Summary Judgment (Doc. 46) in its entirety.   First, Plaintiff failed to exhaust his administrative remedies on his claim for retaliation.   Second, Plaintiff has not has presented evidence to raise a genuine issue of material fact that he was the victim of intentional discrimination on the basis of his religion and national origin.   Plaintiff cannot demonstrate that he (1) was performing his job duties at a level that met his employer's expectations at the time he was terminated, and (2) was replaced by someone of comparative qualifications outside of his protected class.   Furthermore, Plaintiff has not established that FedEx Office's proffered reason for terminating Plaintiff's employment—poor work performance—was not its true reason, but rather a pretext for religion and national origin discrimination under Title VII.

For the foregoing reasons, it is hereby

**ORDERED** that Defendant FedEx Office's Motion for Summary Judgment (Doc. 46) is

**GRANTED**, and this case is **DISMISSED**.

**IT IS SO ORDERED**.

ENTERED this _28th_ day of May, 2015.

Alexandria, Virginia
5/   / 2015

Claude M. Hilton
USDJ